1  Trenton R. Kashima (SBN 291405)
2  **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
   401 West Broadway, Suite 1760
3  San Diego, CA 91942
   Telephone: (212) 946-9389
4  Email: tkashima@milberg.com

5  *Attorneys for Plaintiffs*
   *and the Putative Class*
6

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11 **NATHAN GOTTEN**, and **PAULETTE CARR**    Case No:
   individually, and on behalf of themselves and all
   others similarly situated,

12
                                              **CLASS ACTION COMPLAINT FOR:**
13         Plaintiffs,                         • **VIOLATIONS OF FAIR CREDIT
                                                 REPORTING ACT, 15 U.S.C. § 1681,**
14      v.                                       ***et seq.*;**
                                              • **VIOLATIONS OF CALIFORNIA'S
15 **BLUESTEM BRANDS, INC.,**                    CONSUMER CREDIT REPORTING
                                                 AGENCIES ACT, § 1785.3 *et seq.*;**
16         Defendant.                          • **VIOLATION OF CAL. BUS. & PROF.
                                                 CODE, § 172000, *et seq.*; and**
17                                            • **VIOLATIONS OF CAL. BUS. &
                                                 PROF. CODE, § 17500, *et seq.***
18

19                                            **DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

Plaintiffs Nathan Gotten and Paulette Carr ("Plaintiffs"), individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendant, Bluestem Brands, d/b/a Fingerhut ("Defendant," "Bluestem Brands" or "Fingerhut").  In support thereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.    This is a consumer class action brought for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., California's Consumer Credit Reporting Agencies Act, ("CCRAA") § 1785.3 *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*, and California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500, against Bluestem Brands, d/b/a of Fingerhut.

2.    Inaccurate credit reports directly impair the efficiency of the banking system and undermine the public confidence therein. Congress enacted the FCRA to require reasonable procedures for meeting the needs of consumer credit in a manner that is fair and equitable to consumers, while maintaining confidentiality of consumer financial information.

3.    In this case, Plaintiffs suffered real harm because of inaccurate and arbitrary information in their credit reports. Fingerhut touts itself as a "leading provider for middle-income consumers seeking to establish, build, or rebuild credit through an independent bank partnership" by providing customers revolving credit and installment loans with monthly payment options.[1] Yet, Plaintiffs and other customers who own Fingerhut credit accounts reported substantial reductions in their credit scores as a result of a set of account changes from the company, changes which Plaintiffs and customers never consented to, or were adequately informed about.

4.    Specifically, in April of 2022 when Fingerhut's financing partner changed, Fingerhut chose to close customers' preexisting credit accounts, without their consent. Fingerhut thereafter opened customers new credit accounts to "replace" their old ones, but as a result, there would be two Fingerhut accounts on customers' credit reports with the preexisting account reporting as "closed." Despite the fact that Fingerhut knew, or should have known that "closing" the original

---

[1] https://www.bluestem.com/our-brands/fingerhut/ (Last visited September 14, 2022).

CLASS ACTION COMPLAINT

accounts would negatively impact customers' credit scores, Fingerhut never adequately notified customers or gave them the option to opt out of this credit account change,

5.     On behalf of themselves and the putative Classes proposed herein, Plaintiffs seek statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA, CCRAA, UCL, and FAL.

<u>**JURISDICTION AND VENUE**</u>

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. The Court has supplemental jurisdiction over Plaintiffs' CCRAA, UCL, and FAL claims, pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division.

<u>**PARTIES**</u>

**A.     Plaintiff Gotten**

8.     Plaintiff Nathan Gotten is a natural person who is a resident of Smith River, California. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9.     Plaintiff Gotten opened his Fingerhut account in either May or June of 2019 specifically to build his credit.  Plaintiff Gotten specifically reviewed and relied on statements made on Fingerhut's website, which stated that its credit accounts, when used properly, would help him build new credit history.  Plaintiff Gotten relied on these statements and would not have opened a Fingerhut account if he knew that they would open and close credit accounts without his knowledge or consent, adversely affecting his credit score.

10.     Plaintiff Gotten initially learned that Fingerhut had closed his original Fingerhut account in May of 2022, when he was denied for a different credit card due to a drop in his credit score from above 630 in March of 2022 to 544 in April of 2022.

11.     Plaintiff Gotten thereafter pulled his credit reports to understand what had caused the drop in his credit score to learn that Experian had listed the score reduction in May as being due to the low age of the account, the direct result of Fingerhut having reposted the account after switching their terms.

- 2 -

**B.    Plaintiff Carr**

12.    Plaintiff Paulette Carr is a natural person who is a resident of Lancaster, California. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

13.    Plaintiff Carr opened her Fingerhut account on December 10, 2012, specifically to build her credit, and before Fingerhut closed it in April of 2022, this account was her oldest credit line. Plaintiff Carr specifically reviewed and relied on statements made on Fingerhut's website, which stated that its credit accounts, when used properly, would help her build credit history. Plaintiff Carr relied on these statements and would not have opened a Fingerhut account if she knew that they would open and close credit accounts without her knowledge or consent, adversely affecting her credit score.

14.    Fingerhut's closing of Plaintiff Carr's account lowered the average age of her credit, and a result, her credit score dropped from 839 in March 2022, to a number in the low 700s thereafter.

15.    Plaintiff Carr learned of the change in her credit score because, as a previous victim of attempted identify theft, she monitors her credit closely and was alerted to a new account shortly after Fingerhut closed and reopened hers.

16.    Plaintiff Carr, in an unrelated instance, had a credit account with Old Navy that switched credit lines, yet maintained the original account opening date.

17.    Plaintiff Carr has called and written to Defendant numerous times but has not received any responses.

18.    Plaintiff Carr has notified Defendant that they improperly reported how long she's had her credit account with them and asked that they correct this information on all three major credit bureaus. Plaintiff Carr asked that Defendant contact her when this was completed, but she has not received a response to date.

**C.    Defendant**

19.    Defendant Bluestem Brands, Inc. is a Minnesota corporation, headquartered in Eden Prairie, Minnesota. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant is a "person" as that term is defined in 15 U.S.C. § 1681a(b), and Cal. Civ. Code §

- 3 -

1785.3(j). Defendant, as part of its regular business, reports information to various Consumer Reporting Agencies. Therefore, they are "Furnishers of Information" within the meaning of 15 U.S.C. §§ 1681, *et seq*., and Cal. Civ. Code § 1785 *et seq*. Defendant is also a "creditor" as defined in 15 U.S.C. § 1681a(r)(5). Defendant regularly extends, renews and continues credit. *See also* 15 U.S.C. § 1691(a).

## FACTUAL BACKGROUND

**A.    The Fair Credit Reporting Act and California's Consumer Credit Reporting Act Agency**

20.    Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the Fair Credit Reporting Act in 1970 to ensure the confidentiality, accuracy, relevancy, and proper utilization of credit reports.  Thus, Congress's intention for the FCRA was "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

21.    The FCRA subjects creditors who furnish information about consumers to credit reporting agencies to various requirements. Specifically, the FCRA prohibits information furnishers from providing information to a Credit Reporting Agency that they know or have reasonable cause to believe is inaccurate. 15 U.S.C. § 1681s-2(a)(1)(A).

22.    Further, the FCRA requires that if at any time a person who regularly and in the ordinary course of business furnishes information to one or more CRAs determines that the information provided is not complete or accurate, the furnisher must promptly provide complete and accurate information to the CRA.

23.    In addition, the furnisher must notify all CRAs that received the information of any corrections and must thereafter report only the complete and accurate information. 15 U.S.C. § 1681s-2(a)(2). If a consumer notifies a furnisher that specific information is inaccurate, and the information is, in fact, inaccurate, the furnisher must thereafter report the correct information to CRAs. 15 U.S.C. § 1681s-2(a)(1)(B).

24.    If a consumer notifies a furnisher that the information the consumer disputes the

completeness or accuracy of any information reported by the furnisher, the furnisher may not subsequently report that information to a CRA without providing notice of the dispute. 15 U.S.C. § 1681s-2(a)(3). Under the FCRA, furnishers must complete an investigation within thirty days (or forty-five if the consumer later provides relevant additional information). 15 U.S.C. § 1681s-2(a)(8).

25.     Mirroring the FCRA, the California legislature determined there is a need to ensure that consumer credit reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for consumers' right to privacy. Their express purpose of enacting the CCRAA was to require that consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit in a manner which is fair and equitable to the consumer, regarding the confidentiality, accuracy, relevancy, and proper utilization of such information.[2]

**B.     Closing Credit Accounts Negatively Impacts Consumers' Credit Scores**

26.     A credit score is a number from 300 to 850 that depicts a consumer's creditworthiness. The higher the score, the better a borrower looks to potential lenders. A credit score is based on credit history, which, includes a number of factors. Lenders use credit score to evaluate the probability that an individual will repay loans in a timely manner.

27.     Credit reporting agencies determine credit scores based on the following categories: (1) payment history; (2) age of credit and type of credit, (3) credit utilization ratio; and (4) total balances and debt; (5) recent credit inquiries; and (6) available credit.

28.     Aside from payment history (which is the first), the two second most influential factors that affect an individual's credit score include age of credit and credit utilization ratio.

29.     Credit reporting agencies measure the average age of your credit, which involves taking the average of all the ages of a consumer's individual accounts. Credit reporting agencies care about age of credit because they see it as a future indicator; if—over a span of years—you've been prompt at paying off your debt, you're more likely to do so in the future.

30.     Credit utilization ratio measures the ratio of your credit card balance to your

---

[2] Cal. Civ. C. § 1785.1(d).

CLASS ACTION COMPLAINT

available credit limits. Credit utilization ration is weighed just as heavily as age of credit. Credit reporting agencies care about credit utilization ratio because a higher credit utilization ratio suggests that your balances are high, and there is therefore a greater likelihood that you'll be unable to repay your debt.

31.     Thus, closing a credit card can affect your credit score negatively in two ways: by decreasing the age of your credit and increasing your credit utilization ratio. Because your credit score is based on the average age of all your accounts, closing an account that's been open longer can hurts your credit score. Likewise, for a given level of spending, lowering your total credit available gives you a higher utilization ratio, and hurts your credit score as well.

**C.    Fingerhut's Unilateral Closing of Credit Accounts Negatively Impacted Consumers' Credit Scores**

32.     In April of 2022, Fingerhut's agreement with their financing partner ended.  As a result, on April 12, 2022, Fingerhut unilaterally issued customers a new credit account called "Fingerhut Fetti." In doing so, without customers' consent, Fingerhut opened a brand new line of credit, while simultaneously closing customers' previous "Fingerhut Advantage" credit accounts.

33.     Prior to Fingerhut's new agreement with Fetti, Fingerhut was a proprietary credit card marketed towards consumers with poor or no credit that allows consumers to purchase items from Fingerhut or their affiliates and to build credit by doing so.  Accordingly, Fingerhut was well aware that its account holders were specifically opening Fingerhut credit accounts to build their credit and could not afford to have their credit unnecessarily negatively impacted.  These consumers, including Plaintiffs, specifically relied on Fingerhut to maintain their credit accounts in a manner that would help them build their credit.

34.     Potential account holders sign up for a Fingerhut credit account on its website. On this website, Fingerhut specifically states that "[t]his program is designed to help people who are starting out or starting over… FreshStart customers who have successfully completed this program have seen on average a 30 point increase^ on their FICO® Score" and "[b]uild your credit history when you make a purchase and pay your monthly bill."  Accordingly, Fingerhut specifically advertises and markets that proper use of its credit accounts will improve a consumer's credit score.

Yet, this has not proven true.

35.     Fingerhut sent the following notice to some customers (many consumers reporting receiving no notice at all): "Important Changes To Your Account take a moment to review the recent changes to your Fingerhut account. Fingerhut Fetti Credit Card 1 New Credit Account. Same Great Fingerhut. A new Fingerhut Fetti credit account has replaced your previous Fingerhut Advantage credit account my My Account." Fingerhut's FAQ page includes a section on the "credit account changes" in question, indicating that Fingerhut had issued customers new accounts on April 12, 2022 because their financing agreement with their current financing partner had ended, and that as a result, there would be two Fingerhut accounts on customers' credit reports with the preexisting account reporting as "closed."

36.     Responding to a question about how the change would impact consumers' credit scores, Fingerhut states the following:

> As you know, there are many factors that go into your credit score. It's very difficult for us to provide a definitive impact to your credit score, but illustratively it is possible: Opening a credit account typically boosts the account holders' credit score. This is because you now have two tradelines reporting to the bureaus. However, an unused credit line may be closed for inactivity, which may negatively impact your credit score. A history of on-time payments over time will have a positive impact to your credit score. Similarly, it is very important to continue to keep making payments on your Fingerhut Advantage credit account. If this account becomes delinquent it will negatively impact your credit score.

37.     At no point did Fingerhut give customers the option to opt out of this credit account change and not have a new account opened in their name, in violation of the Fair Credit Reporting Act. Fingerhut also falsely advertises themselves as a way to help customers "establish, build, or rebuild their credit," when in fact Fingerhut customers experienced a significant reduction in their credit scores due to Fingerhut's account changes.

38.     Fingerhut's behavior is not in line with industry practice regarding consumers' credit accounts when financial services companies merge or are purchased. Generally, credit card companies will maintain a single account with an integrated payment history instead of closing the old account and opening a new one without permission.

39.     Customer complaints based on Fingerhut's account changes are uniform across

- 7 -

CLASS ACTION COMPLAINT

multiple websites, including on Reddit, SiteJabber, WalletHub, ConsumerAffairs, and the Better Business Bureau's website as well.

     40.    On Reddit, one post by a distressed Fingerhut customer alone garnered over 120 comments. Here are just a handful of them:



I wrote to fingerhut and said ::::

Hello I logged in and saw the finger hut fetti account I never applied for this and it dropped my credit score 45 points when Im in the middle of applying for a Mortgage, I didnt authorize any new accounts so Im confused what happened and why it dropped my score the only new activity on my credit account was from finger hut, thats why Im confused since I havent bought anything or applied for anything.



fondfox · 6 mo. ago

Thank you! I recieved only one letter from them that was very short and sweet informing that the name was changing but they're still the same fingerhut and you'll still have the same account. That's what they told us. It said nothing about closing & opening accounts without our approval! It's so unnecessary too, I see no reason they needed to do this.



Jock0721 · 6 mo. ago

I have been working hard to raise my score. The new line and closing the account ruined all of my hard work over 2 yrs. I was fine with the switch, I just didn't think it would count as a closed account because I didn't do anything to close it.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 **Broad_Confection8493** · 6 mo. ago

I had my account for 5 years , Never missed a payment or was never late . What they neglected to tell you that the length of your credit is a big part of your score . I lost 5 years of perfect payments to zero . Also the accounts of some people were closed with a balance on them which looks bad . I lost 32 points over night . Then looking at my report the temporary credit increases I opted out of years ago was on my credit report 5 different times . I never used any credit during the times of the temporary increase and if you don't it is not supposed tp go on your credit report . During that time they gave and then took the increase off every time causing me to lose another 60 points in the 5 times they did it . That's 92 points and they will do nothing about it . I was double protected for being opted out of the temporary increase and never using my credit once during those times. They added $500.00 three times and took off $500.00 3 times . They added $800.00 twice and took 800 off 2 times. I disputed it but they put on my credit report Fingerhut said the information was accurate . They advertise to rebuild your credit and then totally ruin it . It should be illegal what they are doing . So check your reports and see if it's not happening to you.. I check everyday now because I don't trust them one bit . Beware .

 **Nearby·Sample·9723** · 6 mo. ago

It happened to me too. I only kept the account open and made a purchase a year to keep my credit score up. Them closing it hurt my credit history then reopening an account really hurt my average age. This is crap. They advertise how to build credit with them okay.

 **RealitygirlM2M** · 5 mo. ago

The exact same thing just happened to me. I had the account for 15 years. It was my oldest account. They closed my account and my score dropped 60 points out of the damn blue. I'm livid. I barely used the account and only kept it open because I didn't want to close it due to it being the oldest account. I will be filing a formal complaint. For everyone who is saying that it is not a big deal, you are wrong. It negatively affects your credit if you had it a long time. I will be closing it after I file my complaint.

**kjt457** · 3 mo. ago

Your credit score likely went down because your average credit age was affected. Fingerhut was my oldest account now its my newest. This really pisses me off. I was going to try and contact the credit agencies and see if they can change the age of the new account to the age of the old one since it's the same company just using a new bank.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 **Dj_Nick91** · 6 mo. ago

My Fingerhut Fetti Account reported as a new account to the credit bureaus. However, for example, when my Amazon Secured Store Card was upgraded to an Amazon Prime Store Card with a new account number. Synchrony Bank only updated the same account while simultaneously maintaining the original payment history; without reporting a brand new account nor resulting in a hard inquiry. Furthermore, I was under the same impression regarding Fingerhut. Moreover, I contacted Fingerhut prior to the respective change and was personally told via telephone call; the account information was only going to be updated with all 3 credit bureaus. To my understanding this clearly implies no new credit account but an updated account. Somehow Fingerhut pulled a 180 at the last minute. In conclusion, my FICO Premier via monthly membership states Company Name: FETTI FINGERHUT/WEBBAN. Previously was Webbank/Fingerhut prior to the change. It seems as though they're still using Webbank, respectively.

 **Bonifide00** · 3 mo. ago

Yup my credit score dropped 45 points due to the Fingerhut advantage card I never knew they enrolled me in. Now I'm 2 payments behind !! What crap!! Has anyone else found anymore info on a class action cause we are being charged for something we didn't want

 **fondfox** · 6 mo. ago

This just happened to me and it just posted to my credit file today. Has anyone had success in getting it fixed? I see no reason for it to appear as a new account opened in 2022, when I opened my fingerhut account in 2019. I had student loans go into default and when I rehabilitated them, they were consolidated and sent to a new company, but they still say 2010 on them, not 2019 when I rehabilitated them. That letter Fingerhut sent me never explicitly said anything about closing the old credit file and opening a new one. It said they were changing names, but were still the same fingerhut. I will see if I can find it. This seems so shady and I'm mad that they opened a completely new account! I would have asked to close my account if I had known.

🐵 **Any_Acanthisitta9843** · 6 mo. ago

I lost about 19 points due to the change in credit age. I had no idea they mailed me anything. Fingerhut sends me all sorts of bullshit in the mail trying to get me to buy their overpriced crap, I just toss it. They HAVE emailed me regarding the risk of my limit dropping if I don't buy anything by such and such a date. But usually I just ignore those too because inevitably they'll bump my limit back up later to try to entice me to buy. It's pretty sick that they constantly screw with the limits like that too. But I did NOT get an email about this and from what I'm reading here, it doesn't make it clear that client's credit would be subject to hits anyway. I had a credit card account that was taken over by another company and this did not happen. I filed disputes with TransUnion and Equifax today so far, we'll see where that goes. Not sure anything will happen. On those two agencies I don't see new inquiries at all... So maybe that helps my case. This is so frustrating.

Class Action Complaint



Broad_Confection8493 · 6 mo. ago

It's on Transunion , Equifax and Experian .They sent emails saying they were forced to change creditors but never said we would lose the years of perfect credit and lower our credit scores . This is after all the company that advertises use them to rebuild your credit . I lost 5 years and went to no years . I lost 32 points over night . Then looking at my report 5 times they put the temporary credit line increase I opted out of years ago plus never used any of my credit during those time periods . They put 500 on 3 times and took 500 off 3 times . They put 800 on twice and took 800 off twice showing I never used any credit during that time period backed up by my account statements . It's in writing they will not put it on your credit report unless you use it . I opted out plus didn't use it .They put it on mine and others on complaint boards and those 5 times costing me another 60 points. I know they were aware they couldn't do that but did so illegally . I assume they read their own emails and letters . There are hundreds of the same complaints on multiple sites . Just type in fingerhut complaints , There are thousands more also about other deceptive practices . In total I lost 92 points on my credit score. 60 just an their illegal Temporary increases they put on my report .The company that advertises to help you rebuild your credit is actually ruining it .People pay 29.99% interest and 3 times the price of the same items sold elsewhere to rebuild their credit and they take your money and then hurt your score with their underhanded moves . I'm waiting to hear back about a class action suit on their temporary credit activity .



Broad_Confection8493 · 6 mo. ago

When I lost 5 years of perfect payments and had no balance on the old account and my $3,500 credit limit stayed the same on the new account my score dropped 32 points due to lowering the age of my accounts . That's a big part of your score .

Few-Entertainer-2514 · 4 mo. ago

The same thing happened to me which caused my credit score to dip by 18 points. I'm not happy with this because they could have easily left the old account on the report and placed a note identifying the new account which would not effect the credit score. Finger Hut doesn't care about our scores which is why they threaten to lower your available credit line when you don't purchases on a regular basis which will lower your score.



AbbreviationsHot157 · 3 mo. ago

This also happened to me. The new account lowered my ' average credit age' and lowered my score by 15 points . I had to call 5xs for them to close it .

41.     As shown above, and as a result of Defendant's conduct, Plaintiffs' and Class members suffered particularized and concrete injuries, including damages to their credit, reputations, and the increased risk of being denied credit. Defendant has therefore violated the

CLASS ACTION COMPLAINT

FCRA, CCRAA, UCL, and FAL.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class and Subclass (collectively "the Class"):

**NATIONWIDE CLASS:** All persons in the United States with Fingerhut Credit Accounts prior to April 12, 2022, that were closed by Fingerhut and replaced with a Fingerhut Fetti Account.

**CALIFORNIA CLASS:** All persons in the state of California with Fingerhut Credit Accounts prior to April 12, 2022, that were closed by Fingerhut and replaced with a Fingerhut Fetti Account.

43.     Plaintiffs reserve the right to amend the definition of the Class and/or Subclass based on discovery or legal developments.

44.     **Numerosity.** The Class members are so numerous that their joinder is impractical. Membership in the Class and Subclass can be ascertained through Defendant's records.

45.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Class members and predominate over the questions affecting only individual members. The common legal and factual questions include, among others,

a. Whether Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the class members' accounts;

b. Whether this conduct constituted violations of the FCRA, CCRAA, UCL, and/or FAL; and

c. Whether the violations were negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of Plaintiffs and Class members.

46.     **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class and Subclass. Plaintiffs have the same claims as Class members, arising out of Defendant's common course of conduct and from the same operative facts, and are based on the same legal theories. Plaintiffs, as all other Class members, allege violations of the same provisions. These claims

challenge the same actions by Defendant and do not depend on any individualized facts. Defendant's notice and knowledge of the issue is the same for Plaintiffs, as for the Class Members.

47.    **Adequacy.** Plaintiffs are adequate representatives of the Class and Subclass. Plaintiffs' interests are aligned with and are not antagonistic to, the interests of the Class members. Plaintiffs have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members.

48.    Predominance and Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of this controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class and Subclass individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgements and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

<u>**CAUSES OF ACTION**</u>

**COUNT I**
**15 U.S.C. § 1681s-2(a)(1)(A)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(On behalf of Plaintiffs individually and the National Class)**

49.    Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

50.    15 U.S.C. § 1681s-2(a)(1)(A) provides that a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has

- 13 -

reasonable cause to believe that the information is inaccurate.

51.     Defendant violated 15 USC § 1681s-2(a)(1)(A) 1681s-2(a)(1)(A) when it failed to take appropriate measures to prevent Plaintiffs' and Class members' credit scores from being unfairly and inaccurately lowered by its closing of Plaintiffs' and Class members' accounts and reporting this information to consumer reporting agencies.

52.     As a result, Plaintiffs and Class members suffered real and actual harm and injury. Specifically, Plaintiffs' and Class members' credit scores were lowered by Defendant's closing of their accounts, due to the average age of their credit decreasing, and their credit utilization ratios increasing.

53.     Defendant's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Defendant liable under 15 U.S.C. §1681o.

54.     As a result of these FCRA violations, Defendant is liable for statutory damages from $100.00 to $1,000.00 for Plaintiffs and each Class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

## COUNT II
### 15 U.S.C. § 1681s-2(a)(1)(B)
**Failure to Report Corrected Information Following Notice of Dispute from a Consumer**
**(On behalf of Plaintiffs individually and the National Class)**

55.     Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

56.     15 U.S.C. § 1681s-2(a)(1)(B) provides that a person shall not furnish information relating to a consumer to any consumer reporting agency if the person has been notified by the consumer that the information is inaccurate.

57.     Defendant violated 15 U.S.C. § 1681s-2(a)(1)(B) in failing to report correct information following notice of dispute from Plaintiffs.

58.     As a result, Plaintiffs and Class members suffered real and actual harm and injury. Specifically, Plaintiffs' and Class members' credit scores were lowered by Defendant's closing of their accounts, due to the average age of their credit decreasing, and their credit utilization ratios

increasing.

59.    Defendant's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Defendant liable under 15 U.S.C. §1681o.

60.    As a result of these FCRA violations, Defendant is liable for statutory damages from $100.00 to $1,000.00 for Plaintiffs and each Class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

<div align="center">

**COUNT III**
**15 U.S.C. § 1681s-2(a)(7)(A)(i)**
**Failure to Provide Notice in Writing of Furnishing Negative Information Related to a Consumer**
**(On behalf of Plaintiffs individually and the National Class)**

</div>

61.    Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

62.    15 U.S.C. § 1681s-2(a)(7)(A)(i) provides that if any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.

63.    Defendant violated 15 U.S.C. § 1681s-2(a)(7)(A)(i) by failing to provide Plaintiffs and Class members proper notice before furnishing negative information to an agency regarding credit extended to them. Here, Defendant both unjustly created the negative credit information and then failed to notify Plaintiffs and Class members of the negative credit information.

64.    As a result, Plaintiffs and Class members suffered real and actual harm and injury. Specifically, Plaintiffs' and Class members' credit scores were lowered by Defendant's closing of their accounts, due to the average age of their credit decreasing, and their credit utilization ratios increasing.

65.    Defendant's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the

<div align="center">- 15 -</div>

alternative, the violation was negligent, rendering Defendant liable under 15 U.S.C. §1681o.

66.    As a result of these FCRA violations, Defendant is liable for statutory damages from $100.00 to $1,000.00 for Plaintiffs and each Class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

<div align="center">

**COUNT IV**
**Cal. Civ. Code § 1785.25(a) & §1785.31(a)(2)**
**Willfully Furnishing Information Known to be Incomplete or Inaccurate**
**(On behalf of Plaintiffs individually and the California Subclass)**

</div>

67.    Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

68.    Cal. Civ. Code §1785.25(a) provides, "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

69.    Cal. Civ. Code §1785.31 provides for civil liability for any party that willfully fails to comply with the provisions of the CCRAA.

70.    Plaintiffs made Defendant aware of the inaccurate information being furnished by them when attempting to contact Defendant multiple times but receiving no response.

71.    By willfully failing to properly modify, delete, or block the reporting of the inaccurate and unlawful false negative information regarding the accounts Defendant closed, Defendant violated Cal. Civ Code § 1785.25(a).

72.    By violating Cal. Civ. Code § 1785.25(a), Defendant is liable to Plaintiffs for damages pursuant to Cal. Civ. Code § 1785.31.

73.    As a direct and proximate result of this unlawful conduct, action, and inaction by Defendant, Plaintiffs and putative Class members suffered damages including loss of credit, increased costs of credit, loss of ability to purchase and benefit from credit, and damage to their reputations.

74.    As such, Defendant is liable to Plaintiffs and Class members for willfully violating the CCRAA pursuant to Cal. Civ. Code § 1785.31(a)(2). As a result of these CCRAA violations, Defendant is liable for punitive damages from $100.00 to $5,000.00 for Plaintiffs and each Class

member, punitive damages, attorneys' fees, and costs pursuant to § 1785.31(d). Additionally, Plaintiffs may seek injunctive relief to compel Defendant's compliance with the CCRAA. Cal. Civ. Code § 1785.31(f).

<div align="center">

**COUNT V**
**Cal. Civ. Code § 1785.25(b) & §1785.31(a)(2)**
**Failure to Promptly Notify Credit Reporting Agencies of Incomplete or Inaccurate Information Regarding Consumers**
**(On behalf of Plaintiffs individually and the California Subclass)**

</div>

75.     Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

76.     Cal. Civ. Code §1785.25(b) provides, "a person who (1) in the ordinary course of business regularly and on a routine basis furnishes information to one or more consumer credit reporting agencies about the person's own transactions or experiences with one or more consumers and (2) determines that information on a specific transaction or experience so provided to a consumer credit reporting agency is not complete or accurate, shall promptly notify the consumer credit reporting agency of that determination and provide to the consumer credit reporting agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the consumer credit reporting agency complete and accurate."

77.     Plaintiffs made Defendant aware of the inaccurate information being furnished by them when attempting to contact Defendant multiple times but receiving no response.

78.     By willfully failing to promptly notify consumer credit reporting agencies that the information provided by them regarding Plaintiffs' and the Class members' credit accounts was incomplete or inaccurate Defendant violated Cal. Civ Code § 1785.25(a).

79.     By violating Cal. Civ. Code § 1785.25(b), Defendant is liable to Plaintiffs for damages pursuant to Cal. Civ. Code § 1785.31.

80.     As a direct and proximate result of this unlawful conduct, action, and inaction by Defendant, Plaintiffs and putative Class members suffered damages including loss of credit, increased costs of credit, loss of ability to purchase and benefit from credit, and damage to their reputations.

81.    As such, Defendant is liable to Plaintiffs and Class members for willfully violating the CCRAA pursuant to Cal. Civ. Code § 1785.31(a)(2). As a result of these CCRAA violations, Defendant is liable for puntative damages from $100.00 to $5,000.00 for Plaintiffs and each Class member, punitive damages, attorneys' fees, and costs pursuant to § 1785.31(d). Additionally, Plaintiffs may seek injunctive relief to compel Defendant's compliance with the CCRAA. Cal. Civ. Code § 1785.31(f).

<div align="center">

**COUNT VI**
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq ("UCL")** *et seq.* **("UCL")**
**(On Behalf of Plaintiffs and the California Subclass)**

</div>

82.    Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

83.    Plaintiffs bring this claim individually and on behalf of all members of the California Subclass against Defendant.

84.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

85.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

86.    <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

    a.  The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*; and

    b.  The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.,

87.    <u>Unfair</u>: Defendant's advertise itself as a way to help customers "establish, build or rebuild their credit" when in fact Plaintiffs and California Subclass members experienced a substantial reduction in their credit scores to Defendant's account changes.[3] Defendant's conduct was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

---

[3] https://www.bluestem.com/our-brands/fingerhut/ (Last visited September 20, 2022).

88.     Defendant's conduct with respect to its advertising is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FCRA, CCRAA, UCL, and FAL.

89.     Defendant's conduct with respect to its advertising is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one which consumers themselves could reasonably have avoided.  Plaintiffs and California Subclass could not avoid the injury caused because they did they did not receive notice of the account changes, or the ability to opt out.

90.     Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

91.     As set forth in detail above, Defendant has fraudulently advertised itself in violation of federal regulations and has made false and misleading statements that are likely to mislead reasonable consumers.

92.     Defendant profited from its deceptive marketing of the credit agreements when replacing Plaintiffs' established accounts without their consent in order to benefit their own business.

93.     Plaintiffs and California Subclass members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information to credit reporting bureaus. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

94.     Defendant's conduct caused and continues to cause substantial injury to Plaintiffs and California Subclass members. Plaintiffs have suffered injury in fact as a result of Defendant's unlawful conduct.

95.     In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

96.     Plaintiffs and California Subclass members also seek an order for and restitution of all monies unjustly acquired through acts of unlawful competition.

CLASS ACTION COMPLAINT

**COUNT VII**
**California's False Advertising Law § 17500 ("FAL")**
**Cal. Bus. & Prof. Code**
**(On Behalf of Plaintiffs and the California Subclass)**

97.     Plaintiffs repeat, reallege, and incorporate by reference all the allegations contained in all previous paragraphs, inclusive, as if fully set forth herein.

98.     Plaintiffs bring this claim individually and on behalf of all members of the California Subclass against Defendant.

99.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. § Prof. Code § 17500.

100.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

101.     As alleged in detail above, the advertising and practices of Defendant relating to its creditor services misled consumers acting reasonably under the circumstances.

102.     Plaintiffs suffered injury in fact as a result of Defendant's actions as ser forth herein because in relying on Defendant's advertising, Plaintiffs suffered damages including loss of credit, increased costs of credit, loss of ability to purchase and benefit from credit, and damage to their reputations.

103.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised its services in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

104.     Defendant profited from its sale of falsely and deceptively advertised services to unwary consumers.

105.     As a result, Plaintiffs, California Subclass members, and the general public are

1  entitled to injunctive relief and equitable relief, restitution, and an order for the disgorgement of the

2  funds by which Defendant was unjustly enriched.

3         106.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs, on behalf of themselves and

4  the California Subclass, seek an order enjoining Defendant from continuing to engage in deceptive

5  business practices, false advertising, and any other prohibited by law, including those set forth in

6  this Complaint.

7  <center>**PRAYER FOR RELIEF**</center>

8         WHEREFORE, Plaintiffs, on behalf of themselves and the Class, prays for relief as

9  follows:

10  a) Determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

11  b) Designating Plaintiffs as the representatives for the Class;

12  c) Designating Plaintiff's Counsel as counsel for the Class;

13  d) Issuing notice to the Class at Defendant's expense;

14  e) Declaring that Defendant committed multiple, separate violations of the FCRA and the

15      CCRAA;

16  f) Declaring that Defendant acted willfully and in deliberate or reckless disregard of the rights

17      of Plaintiff and the Class under the FCRA and CCRAA;

18  g) Declaring that Defendant violated the UCL and FAL;

19  h) Awarding damages, or restitution, under the FCRA. CCRAA, UCL and FAL;

20  i) Awarding statutory damages as provided by the FCRA;

21  j) Awarding punitive damages as provided by the FCRA and CCRAA;

22  k) Issuing an injunction to correct Defendant's false credit reporting'

23  l) Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA.

24      CCRAA, and Cal. Code Civ. Pro. § 1021.5; and

25  m) Granting further relief, in law or equity, as this Court may deem appropriate and just.

26  <center>**DEMAND FOR JURY TRIAL**</center>

27         Plaintiffs, on behalf of themselves and the Class, demands a trial by jury on all issues

28  triable by a jury.

<center>- 21 -</center>

Dated: November 22, 2022

Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

/s/*Trenton R. Kashima*
Trenton R. Kashima (SBN 291405)
401 West Broadway, Suite 1760
San Diego, CA 91942
Telephone: (212) 946-9389
Email: tkashima@milberg.com

*Attorneys for Plaintiffs
and the Putative Class*

- 22 -